# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

Case No.:  3:25-cv-00278

BRIDGET BILAL and HAMIN BILAL,
Individually and as Next of Kin of the
Decedent.

Plaintiffs,

v.

RICKY DIXON in his official capacity as
Secretary of FLORIDA DEPARTMENT
OF CORRECTIONS; SANTA ROSA
CORRECTIONAL INSTITUTION,
RONNIE QUINN, JESSICA SANTIAGO,
KELLY WATKINS, BROWN FUNERAL
HOME & BLUE LAKE CREMATORY,
and RYAN BROWN

Defendants.

_____/

## <u>COMPLAINT</u>

COMES NOW the Plaintiffs, HAMIN BILAL and BRIDGET BILAL,

individually and as next of kin of their deceased son Mack Jenkins, by and through their

undersigned attorney, sues the Defendants, RICKY DIXON in his official capacity as

Secretary for FLORIDA DEPARTMENT OF CORRECTIONS; SANTA ROSA

CORRECTIONAL INSTITUTION, Warden RONNIE QUINN, Assistant Warden

KELLY WATKINS, Assistant Warden JESSICA SANTIAGO, BROWN FUNERAL

HOME & BLUE LAKE CREMATORY, RYAN BROWN, and allege as follows:

1

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this dispute and the parties named herein, pursuant to 28 U.S.C. § 1331, as this action makes issue and alleges violations of the United States Constitution, the provisions of 42 U.S.C. §§ 1983 and 1988; 28 U.S.C. §§ 1331 and 1343; *et. seq*; and 42 U.S.C. § 2000bb *et seq*.

2.     This Court has ancillary jurisdiction pursuant to 29 U.S.C. § 1367 for all state law claims.

3.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 and N. D. Fla. Loc. R. 3. 1. (A)(1) and by virtue of the status of each party as more fully described below.

4.     The acts, omissions and practices described hereafter all occurred within the jurisdiction of the United States District Court in and for the Northern District of Florida.

5.     At all times material hereto, the acts, omissions, practices, and other conduct of each of the Defendants were committed under color of state or local law.

6.     At all times material hereto, the acts and omissions of Defendants and its agents were committed within the course and scope of their employment as agents and employees of Defendants.

7.     Pursuant to Fla. Stat. § 768.28, Defendants were provided a Notice of Claim and injury. Attached hereto as Composite Exhibit "A."

8.     All conditions precedent to bringing this action have been performed, have occurred or have been waived.

## PARTIES

9.     Plaintiff, HAMIN BILAL ("MR. BILAL"), is and was, at all relevant times, a citizen of Florida and a resident of the city of Chipley, in Washington County. He is the natural father and next of kin of the decedent, MACK JENKINS.

10.     Plaintiff, BRIDGET BILAL ("MRS. BILAL"), is and was, at all relevant times, a citizen of Florida and a resident of Chipley County. She is the step-mother and next of kin of the decedent, MACK JENKINS.

11.     The decedent, MACK JENKINS (the "decedent"), was, at all relevant times, the adult son of MR. and MRS. BILAL (together "Plaintiffs"), and was an inmate in the care, custody, and control of the Defendants.

12.     Defendant, RICKY DIXON ("SECRETARY DIXON"), is and was, at all relevant times, the Secretary of the Florida Department of Corrections ("FDOC"), headquartered at 501 South Calhoun Street, Tallahassee, Florida 32399. In this capacity, SECRETARY DIXON was responsible for overseeing the administration, policies, and operations of FDOC, including the care, custody, and control of inmates, including the decedent. SECRETARY DIXON is sued in his official capacities.

13.     Defendant, Florida Department of Corrections ("FDOC"), is a state agency headquartered at 501 South Calhoun Street, Tallahassee, Florida 32399. At all

relevant times, FDCO was the state agency responsible for the custody, supervision, and welfare of inmates in Florida, including the decedent.

14.    Defendant, Santa Rosa Correctional Institution ("SRCI"), is a state-operated correctional facility located at 5850 East Milton Road, Milton, Florida 32583. At all relevant times, SRCI was the correctional facility responsible for the care, custody, and control of the decedent.

15.    Defendant, Warden RONNIE QUINN ("WARDEN QUINN"), served as the Warden of SRCI at all relevant times and was responsible for the overall operation of the facility, including the supervision and enforcement of policies related to inmate care and custody, for supervising staff and ensuring compliance with correctional policies, as well as overseeing inmate welfare and facility operations. At all relevant times, WARDEN QUINN was responsible for the custody, care, and control of the decedent while he was incarcerated at SRCI. WARDEN QUINN is sued in his individual and official capacities.

16.    Defendant, Assistant Warden KELLY WATKINS ("A.W. WATKINS"), served as an Assistant Warden at SRCI at all relevant times. A.W. WATKINS was responsible for the administration, supervision and enforcement of policies related to inmate care and custody, for supervising staff and ensuring compliance with correctional policies, as well as overseeing inmate welfare and facility operations. A.W. WATKINS was directly involved in communications with MR. BILAL regarding the disposition of the decedent's remains and failed to ensure the decedent's body was

4

properly released to his family as requested. A.W. WATKINS is sued in her individual and official capacities.

17. Defendant, Assistant Warden JESSICA SANTIAGO ("A.W. SANTIAGO"), served as an Assistant Warden at SRCI and was responsible for the overall operation of the facility, including the supervision and enforcement of policies related to inmate care and custody, for supervising staff and ensuring compliance with correctional policies, as well as overseeing inmate welfare and facility operations. Despite being notified of Plaintiffs' explicit request to claim their son's body, A.W. SANTIAGO authorized the cremation of the decedent without notifying his family, in violation of FDOC policies and Plaintiffs' religious rights. A.W. SANTIAGO is sued in her individual and official capacities.

18. Defendant, BROWN FUNERAL HOME & BLUE LAKE CREMATORY; d/b/a BROWN FUNERAL HOME ("BFH"), is a domestic corporation doing business in the State of Florida, engaged in the business of providing full-service funeral and crematory services. BFH is located at 1068 Main St., Chipley, Florida 32428. Defendant BFH acted at the direction of FDOC and is responsible for the cremation of the decedent.

19. Defendant, RYAN BROWN ("BROWN"), is and was, at all relevant times, the owner, operator, and manager of BFH, located at 1068 Main Street, Chipley, Florida 32428. As such, BROWN acted at the direction of FDOC and was responsible

for the oversight, management, and execution of funeral and cremation services provided by BFH, including the cremation of the decedent.

20. At all times material hereto, the acts, omissions, practices, and other conduct of each of the Defendants were committed under color of state or local law.

21. At all times material hereto, the acts and omissions of Defendant FDOC and its agents were committed within the course and scope of their employment as agents and employees for Defendant FDOC.

## GENERAL FACTUAL ALLEGATIONS

22. In May and June of 2022, Mack Jenkins was an inmate in the care, custody and custody of Defendant FDOC.

23. In May 2022, while incarcerated at the facility operated by Defendant SRCI, Mack Jenkins suffered a medical emergency and was transported to West Florida Hospital, where he was treated for what appeared to be a cardiac arrest.

24. As MACK JENKINS' condition worsened over the following days, Defendant FDOC failed to notify his family of his deteriorating health or provide the Plaintiffs with any opportunity to be present during their son's hospitalization.

25. On June 6, 2022, Mack Jenkins died alone in a hospital bed, deprived of the comfort and presence of his loved ones. The Plaintiffs were never given the opportunity to say goodbye.

26. That same day, FDOC attempted to call MR. BILAL to notify him of his son's passing, but MR. BILAL missed the call.

27.     On June 7, 2022, MR. BILAL returned the call and spoke with Defendant A.W. WATKINS, who confirmed that his son had passed away.

28.     The following day, on June 8, 2022, MR. BILAL spoke with Defendant SRCI's Chaplain, Mr. Gary Weiborg, and explicitly stated that Plaintiffs' wished to claim their son's body and personal property.

29.     Chaplain Weiborg relayed this request to FDOC officials, including Defendant A.W. SANTIAGO.

30.     On June 14, 2022, Chaplain Weiborg told MR. BILAL that his son's body would be sent to Lewis Funeral Home and provided Plaintiffs with the facility's contact information.

31.     This was false information. FDOC never transferred the decedent's body to Lewis Funeral Home.

32.     Trusting FDOC's representation, MR. BILAL contacted Lewis Funeral Home, only to be told that the facility had never received his son's body.

33.     Despite the Bilal family's clear and timely request to claim the body, FDOC disregarded their wishes.

34.     On June 22, 2022, Defendant A.W. SANTIAGO authorized the cremation of the decedent's body, even though she had already been informed by Chaplin Weiborg that the Plaintiffs wanted to claim his remains.

35.     On June 29, 2022, instead of being transported to Lewis Funeral Home, the decedent's body was instead sent to Defendant, Brown Funeral Home & Blue Lake Crematory without any notice to the Plaintiffs.

36.     FDOC never informed MR. BILAL of this change. FDOC never provided him with contact information for Defendant BFH, nor did it give Plaintiffs an opportunity to intervene before their son's remains were destroyed.

37.     On July 1, 2022, Mr. Jenkins' body was cremated at the direction and under the supervision of Defendant BROWN.

38.     At no time did FDOC or any other Defendants notify the Bilal family that their son's body would be cremated.

39.     The Bilals are observant and practicing Muslims. In Islam, cremation is strictly forbidden. Cremation is considered sacrilegious and a profound violation of the sanctity of the human body.

40.     Had FDOC simply followed its own policies and procedures and respected the family's request, this tragedy could have been prevented.

41.     Had any of the Defendants notified the Plaintiffs that their son's body would be cremated, the family would never have consented to the disposal of their son's body in this manner.

42.     The Bilals were denied their religious rights, denied the opportunity to claim their son's body, and denied the ability to honor him according to their faith and traditions.

43.     On June 27, 2023, the Winston Law Firm sent formal notice and offer of settlement to the Florida Department of Financial Services, advising FDOC of potential claims, attached hereto as "Exhibit A."

44.     On September 11, 2023, the State of Florida denied any wrongdoing, claims against itself, the FDOC, or agents of the state, refusing to acknowledge the violation of the Bilal family's rights, attached hereto as "Exhibit B."

45.     MR. BILAL is an observant Muslim, and in Islamic tradition, cremation is strictly forbidden. Cremation is considered sacrilegious and a profound violation of the dignity of the human body. Accordingly, MR. BILAL would never have consented to the cremation of his son's remains. Defendant FDOC's actions directly interfered with MR. BILAL's ability to exercise his religious beliefs and to ensure that his son's body was treated in accordance with those beliefs; this conduct imposed a substantial burden on MR. BILAL's free exercise of religion.

46.     Furthermore, Defendant, FDOC's decision to authorize the cremation of Mr. Jenkins' body, deprived MR. BILAL and his family of the ability to claim and care for Mr. Jenkins' remains in accordance with their religious beliefs and family traditions.

47.     At all times material hereto, the acts and omissions of Defendant FDOC and its agents were committed within the course and scope of their employment as agents and employees for Defendant FDOC.

48.     At all times relevant hereto, the relationship between Defendants was one in which FDOC and its agents, employees, encouraged and coerced the funeral home

to exercise powers that are traditionally reserved to the state in the seizure of Plaintiffs'
deceased son and the deprivation of Plaintiffs' religious and constitutional rights, and
the funeral home is therefore considered to have performed a government function
under the color of state law.

49.     Plaintiffs have retained the services of the undersigned and are obligated
to pay a reasonable attorney's fee for such services in pursuing the claims asserted
herein. Plaintiffs seek an award of compensatory damages, costs and expenses and
reasonable attorney's fees pursuant to 42 U.S.C. 1983, more specifically described
below. Fee entitlement is as alleged pursuant to 42 U.S.C. 1988.

50.     Pursuant to Fla. Stat. 768.28, Defendants were provided a Notice of Claim
and injury. Attached hereto as Composite Exhibit "A."

51.     All conditions precedent to bringing this action have been performed,
have occurred or have been waived.

## COUNT I
## Plaintiff Hamin Bilal's First Amendment Violation Claim Against All Defendants
## (42 U.S.C § 1983)

Plaintiff, Hamin Bilal reallege and incorporate by reference paragraphs 1–51, as
if fully set forth herein.

52.     The First Amendment to the United States Constitution, as incorporated
against the states through the Fourteenth Amendment, guarantees the right to freely
exercise one's religion without undue government interference.

53.    Under the Free Exercise Clause, government officials and those acting under color of state law are prohibited from taking actions that substantially burden religious practices unless justified by a compelling governmental interest and executed through the least restrictive means available.

54.    Defendant FDOC is a state actor with Ricky Dixon as its acting secretary and is therefore subject to liability under 42 U.S.C. § 1983.

55.    Defendants, A.W. SANTIAGO and A.W. WATKINS were state officials who, acting within the scope of their employment, directly participated in the decision to authorize the cremation of the decedent's body despite explicit religious objections from his family.

56.    Defendant WARDEN QUINN, as the senior officer at SRCI, had direct authority over the facility and was responsible for ensuring compliance with FDOC policies and constitutional protections. Despite having the ability to prevent the unlawful cremation, he failed to intervene or ensure that his subordinates respected Plaintiff's religious rights.

57.    Defendant SECRETARY DIXON, as the head of FDOC, was ultimately responsible for ensuring that agency-wide policies and practices respected constitutional rights. He had the duty and authority to ensure that subordinates followed established procedures protecting inmates' and families' religious rights but failed to take corrective action to prevent the unlawful cremation. His failure to enforce

compliance with constitutional and FDOC policies directly contributed to the violation of Plaintiff's First Amendment rights.

58.    Defendant SRCI through its personnel and administration, failed to follow FDOC's own policies on family claims of inmate remains. The institution's disregard for its established procedures resulted in the unauthorized cremation of the decedent's body, violating Plaintiff's religious rights and causing irreparable harm.

59.    Defendants BFH and BROWN knowingly participated in the deprivation of Plaintiff's religious rights by acting under the direction and coercion of FDOC. Their conduct was indistinguishable from that of the state, making them liable under 42 U.S.C. § 1983 as state actors.

60.    Plaintiff Hamin Bilal is a practicing Muslim who adheres to Islamic teachings that strictly forbid cremation as a desecration of the deceased.

61.    On June 7 and June 9, 2022, MR. BILAL formally claimed the body and property of his deceased son, MACK JENKINS, by contacting FDOC officials,

62.    A notification of the family's claim was sent to multiple FDOC employees, including Defendants, A.W. SANTIAGO and A.W. WATKINS.

63.    Despite this explicit notice, Defendant A.W. SANTIAGO authorized the cremation of MACK JENKINS and directed his body to be transferred to a different funeral home than the one initially communicated and understood to/by Plaintiffs.

64.    On July 1, 2022, MACK JENKINS was cremated, irreversibly depriving Plaintiff of his ability to bury his son according to the Islamic faith.

65.    By authorizing and carrying out the cremation of MACK JENKINS, Defendants directly interfered with Plaintiff's ability to exercise his religious beliefs and practice sacred burial rituals.

66.    Defendants' actions deprived Plaintiff of the ability to perform an essential religious rite, inflicting a spiritual and religious injury that can never be remedied.

67.    Defendant FDOC, through its officials, directed and coerced Defendants BFH and BROWN to proceed with cremation despite its failure of its duty to ensure the cremation was approved by the person who claimed the body and despite its failure to ensure cremation aligned with the religious beliefs of the family.

68.    Defendants BFH and BROWN acted in concert with Defendants FDOC and SRCI, following state instructions and disregarded Plaintiff's religious objections. Their participation was functionally indistinguishable from the state's role, making them liable under 42 U.S.C. § 1983.

69.    Defendants, acting under color of state law, substantially burdened Plaintiff's free exercise of religion by authorizing the cremation of MACK JENKINS' remains against the explicit religious beliefs and objections of his family. No compelling governmental interest justified this action, nor was cremation the least restrictive means available. Defendants could have simply allowed the family to claim the body, as requested, without interfering with their religious beliefs.

70.    Defendants' actions were willful, reckless, and in deliberate disregard of Plaintiff's First Amendment right.

71.    Defendants' actions directly deprived Plaintiff Hamin Bilal of the ability to carry out fundamental religious rites, constituting a severe and irreversible injury.

72.    There was no compelling government interest in overriding the Plaintiff's explicit request to claim their son's body. FDOC's own policies provide for the release of remains to next of kin, and the Bilal family took every necessary step to claim their son's body- and it was known to have been claimed and was claimed- before it was wrongfully cremated.

73.    Even if a compelling interest existed, cremation was not the least restrictive means of handling MACK JENKINS' remains. Defendants could have simply allowed the family to claim the body as they had requested.

74.    As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiff Hamin Bilal suffered irreparable harm, including extreme emotional distress, religious injury, and the permanent loss of his ability to provide his son with a burial in accordance with his faith.

**WHEREFORE,** Plaintiff prays that his Honorable Court grant the following relief on the civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988: A declaration that Defendants substantially burdened and violated Plaintiff's First Amendment right to freely exercise his religion; and Judgment for compensatory damages against Defendants to compensate for the extreme emotional distress,

psychological trauma, and religious injury suffered by Plaintiff due to the unlawful interference with his faith and religious burial rights; punitive damages against Defendants as permitted by law, in light of their willful, reckless, and egregious disregard for Plaintiff's constitutional rights; damages to redress Plaintiff's loss of dignity, spiritual harm, and irreparable deprivation of his ability to fulfill religious burial obligations for his deceased son; reasonable attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action; pre-judgment interest on all economic losses, including pre-judgment interest on attorney's fees; A trial by jury on all issues so triable; and Such other and further relief that this Court may deem just, proper, and appropriate.

## COUNT II
### Plaintiff Hamin Bilal's Claim For Violation of the Religious Freedom Restoration Act Against All Defendants
### (42 U.S.C. § 2000bb et seq)

Plaintiff realleges and incorporates by reference paragraphs 1–51, as if fully set forth herein.

75.    Congress enacted the Religious Freedom Restoration Act ("RFRA") to protect individuals from substantial burdens on religious exercise imposed by government action unless the burden is justified by a compelling governmental interest and is the least restrictive means of achieving that interest. See 42 U.S.C. § 2000bb-1.

15

76.    Plaintiff Hamin Bilal is a practicing Muslim who adheres to Islamic religious tenets, which strictly forbid cremation as a sacrilegious desecration of the human body.

77.    Defendants, acting under color of state law, substantially burdened Plaintiff's religious exercise by authorizing the cremation of MACK JENKINS' remains against his explicit religious beliefs and objections and without affording them the opportunity to physically claim the body after notifying the proper entities of his claim of the body.

78.    Defendants had actual knowledge of Plaintiff's religious beliefs and their demand to claim the decedents' body for proper burial in accordance with Islamic funeral rites. Despite this knowledge:

      a.    Defendant A.W. SANTIAGO knowingly authorized the cremation of the decedent's body on June 22, 2022, despite knowing that it directly violated Plaintiff's religious rights.

      b.    Defendant A.W. WATKINS was directly informed of the family's religious beliefs and request, but failed to take corrective action to prevent the cremation.

      c.    Defendant WARDEN QUINN, as the highest-ranking official at SRCI, failed to intervene to ensure compliance with FDOC policies and federal law protecting religious freedoms.

d.    Defendant SRCI, through its officers and administration, disregarded FDOC policies requiring deference to next of kin claims and failed to accommodate Plaintiff's religious beliefs by allowing him to claim the body as knowingly requested.

e.    Defendant SECRETARY DIXON, as the head of FDOC was ultimately responsible for ensuring that agency-wide policies complied with RFRA and that subordinate officials did not violate Plaintiff's constitutional and statutory religious rights. His failure to enforce compliance contributed directly to the violation.

f.    Defendants BFH and BROWN, acting under state directive, knowingly participated in the deprivation of Plaintiff's religious rights.

79.    By authorizing and carrying out the cremation of the decedent's body against the Plaintiff's religious beliefs, Defendants imposed a substantial burden on their ability to practice their religion by: Permanently depriving him of the ability to perform a religiously mandated burial; Forcing him to endure a state-ordered desecration of their family's loved one's remains; Disregarding their explicit requests to take possession of the body.

80.    There was no compelling governmental interest that justified denying Plaintiff of the ability to claim MACK JENKINS' remains in accordance with his religious beliefs.

81.     Even if a compelling interest existed, Defendants failed to use the least restrictive means available, as they could have simply honored the family's request to retrieve the body for a religious burial.

82.     Defendants' actions deprived Plaintiff of his ability to observe critical religious funeral rites and caused irreparable harm, including severe emotional distress, religious injury, the irreversible loss and permanent destruction of his son's remains in direct violation of his religious beliefs.

83.     Defendants' actions violated RFRA, 42 U.S.C. § 2000bb-1, and Plaintiff is entitled to relief under 42 U.S.C. § 2000bb-1(c), which provides a cause of action for individuals whose religious rights have been violated.

**WHEREFORE,** Plaintiff prays that his Honorable Court grant the following relief on the civil rights claim brought pursuant to 42 U.S.C. § 2000bb et seq: A declaration that Defendants violated RFRA by substantially burdening Plaintiff's religious exercise; Compensatory damages to compensate Plaintiff for the irreparable deprivation of his ability to provide his son with a religious burial and for the severe emotional distress, psychological trauma, loss of dignity, spiritual harm, religious injury suffered by Plaintiff; Punitive damages against Defendants as permitted by law, in light of their willful, reckless, and egregious disregard for Plaintiff's constitutional rights; Attorney's fees pursuant to 42 U.S.C. §§ 1988(b) and 2000bb-1(c), together with the costs and expenses of this civil rights action; pre-judgment interest on all economic losses, including pre-judgment interest on attorney's fees; A trial by jury on all issues so

triable; and such other and further relief that this Court may deem just, proper, and appropriate.

## COUNT III
## Plaintiff Hamin Bilal's Claim For Violation of the Florida Religious Freedom Restoration Act Against All Defendants
### (Florida Statutes § 761, *et seq.*)

Plaintiff realleges and incorporates by reference paragraphs 1–51, as if fully set forth herein.

84.    The Florida Religious Freedom Restoration Act ("FRFRA"), codified at Florida Statutes § 761.03, prohibits the government from substantially burdening a person's free exercise of religion unless the burden is justified by a compelling governmental interest and is the least restrictive means of furthering that interest.

85.    FRFRA applies to state and local governments, including the Florida Department of Corrections (FDOC) and officials acting under color of state law.

86.    Plaintiff is a practicing Muslim who adheres to Islamic religious tenets, which strictly forbid cremation as a sacrilegious desecration of the human body.

87.    Defendants, acting under color of state law, substantially burdened Plaintiff's free exercise of religion by authorizing the cremation of MACK JENKINS' remains against his explicit religious objections and without affording them an opportunity to physically claim the body, which was knowingly claimed.

88.     Defendants had actual knowledge of Plaintiff's religious beliefs and their demand to claim Mr. Jenkins' body for proper burial in accordance with Islamic funeral rites. Despite this knowledge:

a.      Defendant A.W. SANTIAGO knowingly authorized the cremation on June 22, 2022, despite knowing that it directly violated Plaintiff's religious rights.

b.      Defendant A.W. WATKINS was directly informed of the family's religious beliefs and request but failed to take corrective action to prevent the cremation.

c.      Defendant WARDEN QUINN, as the highest-ranking official at SRCI, failed to intervene to ensure compliance with FDOC policies and Florida law protecting religious freedoms.

d.      Defendant SRCI, through its officers and administration, disregarded FDOC policies requiring deference to next of kin claims and failed to accommodate Plaintiffs' religious beliefs by allowing them to claim the body as requested.

e.      Defendant SECRETARY DIXON, as the head of FDOC, was ultimately responsible for ensuring that agency-wide policies complied with FRFRA and that subordinate officials did not violate Plaintiff's religious rights. His failure to enforce compliance contributed directly to the violation.

f.    Defendant FDOC, through its officials and administration, directed and coerced Defendants BFH and BROWN to cremate MACK JENKINS' remains, making them state actors under Florida law for purposes of liability under FRFRA.

g.    Defendants BFH and BROWN, in concert with FDOC and acting under state directive, knowingly participated in the deprivation of Plaintiff's religious rights by disregarding their objections and claim and proceeding with cremation.

89.    By authorizing and carrying out the cremation of Mr. Jenkins against Plaintiff's religious beliefs, Defendants imposed a substantial burden on Plaintiff's ability to practice his faith by: Permanently depriving his of the ability to perform a religiously mandated burial; Forcing them to endure a state-ordered desecration of their loved one's remains; Disregarding their explicit requests to take possession of the body.

90.    Defendants' actions imposed a substantial burden on Plaintiff's religious exercise by depriving him of the ability to perform religious burial rites and adhere to his sincerely held religious beliefs.

91.    There was no compelling government interest that justified denying Plaintiffs the ability to claim MACK JENKINS' remains in accordance with Hamin Bilal's religious beliefs.

92.     Even if a compelling interest existed, Defendants failed to use the least restrictive means available, as they could have simply honored the family's request to retrieve the body for a religious burial.

93.     Defendants' actions deprived Plaintiff of his ability to observe critical religious funeral rites and caused irreparable harm, including severe emotional distress, religious injury, the irreversible loss and permanent destruction of his loved son's remains in direct violation of his religious beliefs.

94.     Pursuant to Florida Statutes § 761.03(1)(b), Defendants' actions constitute an unlawful burden on religious exercise, entitling Plaintiff to relief.

**WHEREFORE,** Plaintiff prays that his Honorable Court grant the following relief: A declaration that Defendants violated FRFRA by substantially burdening Plaintiff's religious exercise; Compensatory damages against Defendants to compensate Plaintiff for the irreparable deprivation of his ability to provide his son with a religious burial and for the severe emotional distress, psychological trauma, loss of dignity, spiritual harm, religious injury suffered by Plaintiff; Punitive damages against Defendants as permitted by law, in light of their willful, reckless, and egregious disregard for Plaintiff's religious rights; Attorney's fees pursuant to Florida Statutes § 761.03(3), together with the costs and expenses of this action; Pre-judgment interest on all economic losses, including pre-judgment interest on attorney's fees; A trial by jury on all issues so triable; and such other and further relief that this Court may deem just, proper, and appropriate

## COUNT IV
## All Plaintiffs' Claims for Violation of the Fourth Amendment Against All Defendants
## (42 U.S.C § 1983)

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

95.    The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects against unreasonable seizures of persons and property.

96.    A deceased person's body is a protectable property interest, and next of kin have a legal right to claim and control the disposition of their loved one's remains.

97.    Plaintiffs, as the surviving parents of Mack Jenkins, had an explicit legal right to claim his remains for religious burial.

98.    Defendants, acting under color of state law, unlawfully seized MACK JENKINS' remains by authorizing and carrying out the cremation of his body against his family's explicit instructions.

99.    Defendants BFH and BROWN, acting at the direction of FDOC, actively participated in this unlawful seizure by cremating MACK JENKINS' remains despite knowing the family objected. Their conduct was functionally indistinguishable from the state's role, making them state actors under 42 U.S.C § 1983.

100.    On June 7 and June 9, 2022, Plaintiffs formally notified FDOC officials that they were claiming MACK JENKINS' remains for burial.

23

101.    SRCI Chaplain Gary Weiborg, Defendants A.W. WATKINS and A.W. SANTIAGO were all directly informed of Plaintiffs' explicit instructions.

102.    Despite this, on June 22, 2022, Defendant A.W. SANTIAGO authorized the cremation of MACK JENKINS' body without Plaintiffs' consent and in direct violation of their religious beliefs.

103.    Defendants BFH and BROWN, following Defendant FDOC's directive, cremated MACK JENKINS' body on July 1, 2022.

104.    Plaintiffs were never informed of the cremation in advance and were denied possession of their son's remains despite asserting their right to claim them.

105.    Defendants' actions constituted an unlawful seizure of MACK JENKINS' remains, depriving Plaintiffs of their legal right to determine the disposition of their son's body.

106.    Defendants had actual knowledge that Plaintiffs sought to claim MACK JENKINS' body, yet they proceeded with the cremation regardless.

107.    Defendants A.W. WATKINS and WARDEN QUINN failed to intervene to prevent this unauthorized and unconstitutional seizure.

108.    Defendants SRCI and FDOC, under the leadership of Defendant SECRETARY DIXON, facilitated and enforced the wrongful taking and destruction of MACK JENKINS' remains.

109.    Defendants' retention and cremation of MACK JENKINS' body constituted an unreasonable seizure in violation of the Fourth Amendment.

110. This violation was committed under color of state law and within the course and scope of Defendants' employment.

111. There was no legitimate governmental purpose for this seizure, nor was it justified under any correctional or legal policy.

112. Defendants acted willfully and with reckless disregard for Plaintiffs' constitutional rights.

113. As a direct and proximate result of Defendants' unconstitutional seizure of their son's remains, Plaintiffs suffered irreparable harm, including but not limited to: severe emotional distress due to the forced and irreversible cremation of their loved one; religious injury from the desecration of MACK JENKINS' body in violation of Islamic law and; the permanent loss of their ability to provide their son with a burial in accordance with their faith.

**WHEREFORE,** Plaintiffs pray that his Honorable Court grant the following relief on the civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988: A declaration that Defendants violated Plaintiffs' Fourth Amendment right to be free from unlawful seizure by improperly retaining and cremating MACK JENKINS' remains against their explicit wishes; Compensatory damages against Defendants to redress the extreme emotional distress and psychological trauma suffered by Plaintiffs as a result of the unlawful seizure and destruction of their son's remains; loss of dignity and autonomy over their fundamental right to control their son's burial and disposition; permanent and irreparable deprivation of their ability to provide a proper religious

burial for Mack Jenkins; Punitive damages against Defendants as permitted by law, due to their willful, reckless, and egregious disregard for Plaintiffs' constitutional rights; Attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988; Pre-judgment interest on all economic losses, including attorney's fees; A trial by jury on all issues so triable; Such other and further relief as this Court deems just, proper, and appropriate.

## COUNT V
## All Plaintiffs' Claims for Violation of the Fifth Amendment Against All Defendants
## (42 U.S.C § 1983)

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

114.    The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that no person shall be deprived of life, liberty, or property without due process of law, and that private property shall not be taken for public use without just compensation.

115.    A deceased person's body is a legally recognized property interest, and next of kin have a constitutionally protected right to control the disposition of their loved one's remains.

116.    Plaintiffs, as next of kin of Mack Jenkins, had a legally protected property interest in their son's remains and a right to determine their disposition.

117.    Defendant FDOC, in concert with Defendants BFH and BROWN, took and disposed of MACK JENKINS' remains without Plaintiffs' consent, due process, or just compensation.

118.    Defendant A.W. SANTIAGO directly authorized the cremation, despite having actual knowledge that Plaintiffs had asserted their legal right to claim their son's remains.

119.    Defendants A.W. WATKINS, WARDEN QUINN, and FDOC leadership failed to intervene, despite being fully aware that Plaintiffs objected to the cremation and sought possession of their son's remains.

120.    Defendants FDOC, SRCI and SECRETARY DIXON allowed the destruction of MACK JENKINS' remains to occur under their authority, without affording Plaintiffs an opportunity to be heard.

121.    Defendants BFH and BROWN, acting under color of state law, knowingly participated in the unauthorized seizure and destruction of MACK JENKINS' remains, disregarding Plaintiffs' explicit objections.

122.    Plaintiffs were given no notice, no hearing, and no opportunity to prevent the unlawful cremation of their son's body, violating their right to due process.

123.    Defendants' unauthorized retention, transfer, and cremation of MACK JENKINS' body constituted an unlawful taking of property, depriving Plaintiffs of their fundamental right to control the disposition of their son's remains.

124.    Defendants exercised absolute control over MACK JENKINS' remains, effectively seizing them without affording Plaintiffs due process or an opportunity to prevent his wrongful cremation.

125.    There was no legitimate governmental purpose for this taking, nor was it justified under any correctional or legal policy.

126.    Defendants' actions were arbitrary, unjustified, and in clear violation of fundamental principles of fairness and due process.

127.    Defendants' actions were not undertaken for any legitimate public use or purpose and instead were arbitrary, capricious, and oppressive.

128.    As a direct and proximate result of Defendants' unconstitutional seizure of their son's remains, Plaintiffs suffered irreparable harm, including but not limited to severe emotional distress due to the forced and irreversible cremation of their loved one; religious injury from the desecration of MACK JENKINS' body in violation of Islamic law and; permanent loss of their ability to provide their son with a burial in accordance with their faith.

**WHEREFORE,** Plaintiffs pray that his Honorable Court grant the following relief on the civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988: A declaration that Defendants  violated Plaintiffs' Fifth Amendment rights under the Due Process and Takings Clauses by unlawfully seizing and disposing of MACK JENKINS' remains without notice, consent, or just compensation; Compensatory damages against Defendants  to  redress  the  extreme  emotional  distress  and  psychological  trauma

suffered by Plaintiffs as a result of the unlawful seizure and destruction of their son's remains; loss of dignity and autonomy over their fundamental right to control their son's burial and disposition; permanent and irreparable deprivation of their ability to provide a proper religious burial for Mack Jenkins; Punitive damages against Defendants as permitted by law, due to their willful, reckless, and egregious disregard for Plaintiffs' constitutional rights; Attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988; Pre-judgment interest on all economic losses, including attorney's fees; A trial by jury on all issues so triable; Such other and further relief as this Court deems just, proper, and appropriate.

<u>**COUNT VI**</u>
<u>**All Plaintiffs' Claims for Violation of the Fourteenth Amendment Against All Defendants**</u>
<u>**(42 U.S.C § 1983)**</u>

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

129.   The Fourteenth Amendment to the United States Constitution guarantees that no state shall deprive any person of life, liberty, or property without due process of law.

130.   Plaintiffs, as the next of kin of Mack Jenkins, had a protectable property interest in his remains and a fundamental right to control their disposition.

131.    Defendants deprived Plaintiffs of their procedural due process rights by failing to notify them that MACK JENKINS' remains would be cremated, thereby denying them an opportunity to be heard, object, or claim his body.

132.    Defendant FDOC and its officials, through Defendant SRCI, directed and coerced Defendants BFH and BROWN to exercise powers traditionally reserved for the state by seizing and cremating MACK JENKINS' body without Plaintiffs' consent.

133.    By knowingly accepting and cremating MACK JENKINS' remains despite clear objections from his family, Defendants BFH and BROWN participated in the unconstitutional deprivation of Plaintiffs' rights.

134.    Defendants provided no legal process, no notice, and no opportunity for Plaintiffs to intervene before permanently destroying their ability to claim their son's remains.

135.    This complete failure to provide notice or procedural safeguards violated Plaintiffs' Fourteenth Amendment rights.

136.    The Fourteenth Amendment also protects individuals from government actions that "shock the conscience" and deprive them of fundamental liberty interests.

137.    The right of next of kin to control the remains of a deceased family member is a deeply rooted and fundamental liberty interest, recognized by common law and statutory protections.

138.    Defendants' decision to authorize the cremation of Mack Jenkins, despite explicit and repeated objections from his family, constitutes a deliberate, arbitrary, and egregious abuse of government power.

139.    Defendants BFH and BROWN, acting under color of state law, knowingly participated in the unconstitutional deprivation of Plaintiffs' rights by proceeding with cremation at the direction of FDOC.

140.    By authorizing the destruction of Plaintiffs' son's remains without notice or consent, Defendants engaged in conduct so outrageous and unjustified that it shocks the conscience and violates the fundamental principles of liberty protected by the Fourteenth Amendment.

141.    As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiffs suffered irreparable harm, including, but not limited to severe emotional distress to the forced and irreversible cremation of their son's remains; from the desecration of MACK JENKINS' body in violation of core Islamic tenants; the permanent and irreparable loss of their ability to provide their son with a burial in accordance with their faith.

**WHEREFORE,** Plaintiffs pray that his Honorable Court grant the following relief on the civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988: A declaration that Defendants  violated Plaintiffs' Fourteenth Amendment rights by depriving them of both procedural and substantive due process protections in connection with the unauthorized cremation of MACK JENKINS' remains;

Compensatory damages against Defendants to redress the extreme emotional distress and psychological trauma suffered by Plaintiffs as a result of Defendants unconstitutional conduct; loss of dignity and autonomy over their fundamental right to control their son's burial and disposition; permanent and irreparable deprivation of their ability to provide a proper religious burial for Mack Jenkins; Punitive damages against Defendants as permitted by law, due to their willful, reckless, and egregious disregard for Plaintiffs' constitutional rights; Attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988; Pre-judgment interest on all economic losses, including attorney's fees; A trial by jury on all issues so triable; Such other and further relief as this Court deems just, proper, and appropriate.

## COUNT VII
### All Plaintiffs' Claims for Negligence Against Defendants FDOC, SRCI, SECRETARY DIXON, and WARDEN QUINN

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

142. Defendant FDOC, through Defendants SECRETARY DIXON, WARDEN QUINN, and SRCI owed a duty of care to properly handle the remains of deceased inmates in accordance with Florida law and administrative regulations.

143. Rule 33-602.112(2)(b) of the Florida Administrative Code requires Defendants FDOC and SRCI to surrender an inmate's body to any person who makes a valid claim and agrees to lawfully dispose of it.

144. Defendants FDOC and SRCI also have a duty to notify the next of kin before proceeding with cremation when disposal is arranged by FDOC. See Fla. Admin. R. 33-602.112(3)(b).

145. Defendant FDOC, acting through Defendants SECRETARY DIXON, WARDEN QUINN, and SRCI, breached this duty by: Failing to properly notify Plaintiffs of their right to claim MACK JENKINS' remains; Misdirecting Mr. Bilal to the wrong funeral home, preventing him from timely claiming the body; Failing to inform Plaintiffs that if the body was not timely claimed, it would be cremated; and Authorizing the cremation of Mack Jenkins despite Plaintiffs' explicit request to retrieve his remains.

146. Defendant SECRETARY DIXON, as head of FDOC, had ultimate responsibility for ensuring compliance with these regulations and failed to enforce policies that would have protected Plaintiffs' rights.

147. Defendant WARDEN QUINN, as the senior official at SRCI, had direct supervisory authority over the institution's handling of remains and failed to intervene to ensure compliance with the law.

148. Defendants FDOC and SRCI's failure to follow its own policies and regulations constitutes gross negligence and a reckless disregard for Plaintiffs' rights.

149. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered damages, including but not limited to: The destruction of their son's remains

against their wishes; Severe emotional distress and psychological trauma; Religious injury due to the inability to perform proper burial rites.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants FDOC, SECRETARY DIXON, WARDEN QUINN, and SRCI for compensatory damages in an amount sufficient to fully compensate Plaintiffs for the severe emotional distress, psychological trauma, and religious injury suffered as a direct result of Defendants' negligence, including damages for the wrongful destruction of their son's remains, the deprivation of their right to provide him a religious burial, and the loss of dignity and familial integrity. Plaintiffs further seek punitive damages in an amount sufficient to punish Defendants for their reckless, willful, and wanton disregard for Plaintiffs' rights and to deter similar misconduct in the future. Plaintiffs also seek pre-judgment interest on all economic and non-economic losses sustained, post-judgment interest at the maximum legal rate until the judgment is satisfied, and reasonable attorney's fees and litigation costs where authorized by law. Plaintiffs demand a trial by jury on all issues so triable and request such other and further relief as this Court deems just, proper, and equitable.

## COUNT VIII
## All Plaintiffs' Claims for Negligence Against Assistant Warden Kelly Watkins

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

34

150.    Defendant A.W. WATKINS was responsible for communicating with Plaintiffs following their son's passing and ensuring compliance with FDOC policies on inmate remains.

151.    Defendant A.W. WATKINS owed a duty to Plaintiffs to ensure that they were properly informed of their son's disposition and to follow established regulations on notifying next of kin.

152.    Defendant A.W. WATKINS breached this duty by: Failing to notify Plaintiffs that Mack Jenkins would be transferred to a different funeral home than they were originally told; and Failing to inform Plaintiffs that the body would be cremated if not timely claimed.

153.    Had Defendant A.W. WATKINS properly communicated this information, Plaintiffs would have intervened to prevent the cremation.

154.    As a direct and proximate result of Defendant A.W. WATKINS' negligence, Plaintiffs suffered damages, including but not limited to: The loss of their son's remains; Severe emotional distress and psychological trauma; Religious injury due to the inability to conduct a proper burial.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant ASSISTANT WARDEN KELLY WATKINS for compensatory damages in an amount sufficient to fully compensate Plaintiffs for the severe emotional distress, psychological trauma, and religious injury suffered as a direct result of Defendant's negligence, including damages for the wrongful destruction of their son's remains, the deprivation of their right to

35

provide him a religious burial, and the loss of dignity and familial integrity. Plaintiffs further seek punitive damages in an amount sufficient to punish Defendant for her reckless, willful, and wanton disregard for Plaintiffs' rights and to deter similar misconduct in the future. Plaintiffs also seek pre-judgment interest on all economic and non-economic losses sustained, post-judgment interest at the maximum legal rate until the judgment is satisfied, and reasonable attorney's fees and litigation costs where authorized by law. Plaintiffs demand a trial by jury on all issues so triable and request such other and further relief as this Court deems just, proper, and equitable.

## <u>COUNT IX</u>
### <u>All Plaintiffs' Claims for Negligence Against Assistant Warden Jessica Santiago</u>

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

155.    Defendant A.W. SANTIAGO was responsible for communicating with Plaintiffs following their son's passing and ensuring compliance with FDOC policies on inmate remains.

156.    Defendant A.W. SANTIAGO owed a duty to Plaintiffs to ensure that they were properly informed of their son's disposition, to follow established regulations on notifying next of kin, to ensure that MACK JENKINS' remains were properly handled and that Plaintiffs were given accurate information about his disposition.

157.    Defendant A.W. SANTIAGO breached this duty by: Authorizing the cremation of Mack Jenkins despite knowing Plaintiffs had expressly requested to claim

his remains; Failing to notify Plaintiffs that their son's body was transferred to a different funeral home; Failing to inform Plaintiffs that cremation would proceed if the body was not timely claimed.

158.    Had A.W. SANTIAGO fulfilled her duty, Plaintiffs would have been able to take appropriate action to prevent the wrongful cremation.

159.    As a direct and proximate result of Defendant A.W. SANTIAGO'S negligence, Plaintiffs suffered damages, including but not limited to: The loss of their son's remains; Severe emotional distress and psychological trauma; Religious injury due to the inability to conduct a proper burial.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant ASSISTANT WARDEN JESSICA SANTIAGO for compensatory damages in an amount sufficient to fully compensate Plaintiffs for the severe emotional distress, psychological trauma, and religious injury suffered as a direct result of Defendant's negligence, including damages for the wrongful destruction of their son's remains, the deprivation of their right to provide him a religious burial, and the loss of dignity and familial integrity. Plaintiffs further seek punitive damages in an amount sufficient to punish Defendant for her reckless, willful, and wanton disregard for Plaintiffs' rights and to deter similar misconduct in the future. Plaintiffs also seek pre-judgment interest on all economic and non-economic losses sustained, post-judgment interest at the maximum legal rate until the judgment is satisfied, and reasonable attorney's fees and litigation costs where

authorized by law. Plaintiffs demand a trial by jury on all issues so triable and request such other and further relief as this Court deems just, proper, and equitable.

## COUNT X
## All Plaintiffs' Claims for Negligence Against Defendant Brown Funeral Home & Blue Lake Crematory

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

160.    Defendant BFH accepted MACK JENKINS' body from FDOC on June 22, 2022.

161.    On July 1, 2022, Defendant BFH cremated MACK JENKINS' remains.

162.    For 10 days, Defendant BFH had exclusive possession of MACK JENKINS' body and failed to make any effort to notify, contact, or obtain consent from next of kin before proceeding with cremation

163.    There is no known correspondence from the funeral home to FDOC or any other state agency seeking contact information for the family

164.    As a professional funeral service provider, Defendant BFH owed a duty of care to: Take reasonable steps to identify and notify next of kin before cremation; Ensure that the disposition of remains complied with the religious beliefs and wishes of the family; and Confirm that any cremation order was authorized by a legally responsible party.

165.    Defendants BFH breached this duty by: Failing to conduct due diligence to locate or notify the next of kin; Proceeding with cremation without seeking or

38

obtaining Plaintiffs' consent; Disposing of MACK JENKINS' remains in direct violation of the family's religious beliefs and rights.

166.   Had Defendant BFH made even minimal efforts to contact the Bilal family, Plaintiffs would have immediately objected to the cremation and made arrangements to claim the body.

167.   By failing to notify or attempt to notify Plaintiffs before cremation, Defendant BFH directly caused the wrongful destruction of MACK JENKINS' remains, depriving Plaintiffs of their ability to provide him a proper burial in accordance with their faith.

168.   Defendant BFH's failure to act was not merely negligent—it was reckless and demonstrated a disregard for the sanctity of human remains and the rights of next of kin.

169.   As a direct and proximate result of Defendants BFH's negligence, Plaintiffs suffered damages, including but not limited to: The wrongful destruction of their son's remains; Severe emotional distress and psychological trauma; Religious injury due to the inability to conduct a proper burial.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant BROWN FUNERAL HOME & BLUE LAKE CREMATORY for compensatory damages in an amount sufficient to fully compensate Plaintiffs for the severe emotional distress, psychological trauma, and religious injury suffered as a direct result of Defendant's negligence, including damages for the wrongful destruction of their son's remains, the

deprivation of their right to provide him a religious burial, and the loss of dignity and familial integrity. Plaintiffs further seek punitive damages in an amount sufficient to punish Defendant for its reckless, willful, and wanton disregard for Plaintiffs' rights and to deter similar misconduct in the future. Plaintiffs also seek pre-judgment interest on all economic and non-economic losses sustained, post-judgment interest at the maximum legal rate until the judgment is satisfied, and reasonable attorney's fees and litigation costs where authorized by law. Plaintiffs demand a trial by jury on all issues so triable and request such other and further relief as this Court deems just, proper, and equitable.

## COUNT XI
## All Plaintiffs' Claims for Negligence Against Defendant Ryan Brown (Owner & Operator Of Brown Funeral Home & Blue Lake Crematory)

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

170.    At all relevant times, Defendant BROWN was the owner, operator, and decision-making authority for Brown Funeral Home & Blue Lake Crematory.

171.    As the individual responsible for overseeing funeral home operations, Defendant BROWN had a personal duty to ensure that his funeral home acted with reasonable care in the handling and disposition of human remains.

172.    This duty included: Ensuring that remains were not cremated without obtaining proper authorization from the next of kin; Taking reasonable steps to identify

and notify the decedent's family before proceeding with cremation; Complying with professional standards and legal obligations regarding the handling of unclaimed bodies.

173.    On or about June 22, 2022, Defendant BFH, under the direction and supervision of Defendant BROWN, took possession of MACK JENKINS' remains from Defendant FDOC.

174.    For 10 days, Defendant BROWN failed to take any reasonable action to locate or notify MACK JENKINS' next of kin before authorizing the irreversible cremation.

175.    On July 1, 2022, Defendant BFH, under Defendant BROWN's authority, cremated MACK JENKINS' remains without obtaining Plaintiffs' consent.

176.    Defendant BROWN breached his duty of care by: Failing to require his staff to verify whether next of kin had been contacted before proceeding with cremation; Failing to ensure compliance with professional funeral industry standards, which require due diligence in confirming family wishes; Overseeing and allowing the wrongful cremation of Mack Jenkins, despite no authorization from Plaintiffs or any legally responsible party.

177.    Had Defendant BROWN or his staff attempted to contact Plaintiffs, they would have been informed that cremation was strictly forbidden under their religious beliefs and that they intended to claim MACK JENKINS' body for burial.

178.    By failing to take reasonable steps to prevent the unauthorized cremation, Defendant BROWN directly contributed to the irreversible destruction of MACK

JENKINS' remains and deprived Plaintiffs of their legal right to determine their son's burial.

179.    As a direct and proximate result of Defendant BROWN's negligence, Plaintiffs suffered: The wrongful destruction of their son's remains; Severe emotional distress and psychological trauma; Religious injury due to the inability to conduct a proper burial.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant RYAN BROWN, as owner and operator of Brown Funeral Home & Blue Lake Crematory, for compensatory damages in an amount sufficient to fully compensate Plaintiffs for the severe emotional distress, psychological trauma, and religious injury suffered as a direct result of Defendant's negligence, including damages for the wrongful destruction of their son's remains, the deprivation of their right to provide him a religious burial, and the loss of dignity and familial integrity. Plaintiffs further seek punitive damages in an amount sufficient to punish Defendant for his reckless, willful, and wanton disregard for Plaintiffs' rights and to deter similar misconduct in the future. Plaintiffs also seek pre-judgment interest on all economic and non-economic losses sustained, post-judgment interest at the maximum legal rate until the judgment is satisfied, and reasonable attorney's fees and litigation costs where authorized by law. Plaintiffs demand a trial by jury on all issues so triable and request such other and further relief as this Court deems just, proper, and equitable.

## COUNT XII

42

**All Plaintiffs' Claims for Tortious Interference With A Dead Body Against Defendants FDOC, SRCI, SECRETARY DIXON, WARDEN QUINN, A.W. WATKINS and A.W. SANTIAGO**

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

180.   Florida law recognizes that surviving family members have a protected right to control the remains of their deceased loved ones, and wrongful interference with those remains gives rise to legal liability.

181.   Plaintiffs, as next of kin, had a legally recognized right to determine the disposition of their son's body and to perform religious burial rites in accordance with their faith.

182.   Defendants had actual knowledge that Plaintiffs sought to claim MACK JENKINS' remains well before his wrongful cremation.

183.   Despite this knowledge, Defendants failed to notify Plaintiffs of their son's location or that cremation had been authorized, thereby unlawfully interfering with Plaintiffs' ability to recover and bury his remains.

184.   Defendants FDOC and SRCI, through its officials, had ample time to notify Plaintiffs of the planned cremation but failed to do so, acting with reckless disregard for Plaintiffs' rights.

185.   Defendant A.W. SANTIAGO authorized the cremation despite knowing Plaintiffs objected, while Defendants WARDEN QUINN and A.W. WATKINS failed to prevent it despite having the authority and knowledge to do so.

186.    Defendant SECRETARY DIXON, as the head of FDOC, had ultimate responsibility for ensuring compliance with agency policies designed to protect the rights of next of kin, yet failed to take any action to prevent the unlawful cremation.

187.    The actions of Defendants FDOC, SRCI, SECRETARY DIXON, WARDEN QUINN, A.W. SANTIAGO, and A.W. WATKINS were reckless, willful, and demonstrated a complete disregard for Plaintiffs' rights.

188.    As a direct and proximate result of Defendants' wrongful interference with MACK JENKINS' remains, Plaintiffs suffered: Profound emotional anguish, including shock, grief, depression, and a deep sense of violation and loss; Religious injury due to the irreversible destruction of their son's remains, preventing a burial in accordance with their faith; Loss of dignity and autonomy over their son's final disposition, a deeply personal and sacred right.

**WHEREFORE,** Plaintiffs pray for the following relief: A declaration that Defendants FDOC, SRCI, SECRETARY DIXON, WARDEN QUINN, A.W. SANTIAGO, and A.W. WATKINS unlawfully interfered with Plaintiffs' right to control the disposition of their son's remains; Judgment for compensatory damages against Defendants for the severe emotional and psychological trauma suffered by Plaintiffs; Judgment for punitive damages against Defendants for their reckless, willful, and outrageous disregard for Plaintiffs' rights; Judgment for reasonable attorney's fees and litigation costs; Pre-judgment interest on all economic losses; A trial by jury on all issues so triable; Such other and further relief as the Court deems just and appropriate.

## COUNT XIII
## All Plaintiffs' Claims for Tortious Interferences With A Dead Body Against Defendants Brown Funeral Home & Blue Lake Crematory And Ryan Brown

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

189.    Defendants BFH and its owner, Defendant BROWN, had possession of MACK JENKINS' remains for 10 days before proceeding with cremation on July 1, 2022.

190.    As a professional funeral home and crematory, Defendants had an independent duty to: Verify whether next of kin had been notified before cremation; Ensure that any cremation was authorized by a legally responsible party; Comply with industry standards that require due diligence before disposing of human remains.

191.    Defendants knew or should have known that surviving family members have a legally recognized interest in the remains of a deceased loved one.

192.    Despite this, Defendants: failed to make any effort to contact Plaintiffs before proceeding with the cremation; Failed to request next-of-kin contact information from FDOC or any other state agency; and Cremated MACK JENKINS' remains without obtaining Plaintiffs' consent.

193.    Had Defendants made reasonable efforts to contact Plaintiffs, they would have been informed that: Cremation was strictly forbidden under their religious beliefs; They intended to claim MACK JENKINS' body for a religious burial.

194.   By proceeding with the unauthorized cremation, Defendants: Interfered with Plaintiffs' legally recognized interest in the disposition of their son's remains; Denied Plaintiffs the ability to provide Mack Jenkins with a burial in accordance with their faith; Caused Plaintiffs severe emotional distress and mental anguish.

195.   As a direct and proximate result of Defendants' wrongful interference with MACK JENKINS' remains, Plaintiffs suffered: Profound emotional anguish, including shock, grief, depression, and a deep sense of violation and loss; Religious injury due to the inability to conduct a proper burial; Loss of dignity and autonomy over their son's final disposition.

**WHEREFORE,** Plaintiffs pray for the following relief: A declaration that Defendants BFH and BROWN unlawfully interfered with Plaintiffs' right to control the disposition of their son's remains; Judgment for compensatory damages against Defendants for the severe emotional and psychological trauma suffered by Plaintiffs; Judgment for punitive damages against Defendants for their reckless, willful, and outrageous disregard for Plaintiffs' rights; Judgment for reasonable attorney's fees and litigation costs; Pre-judgment interest on all economic losses; A trial by jury on all issues so triable; Such other and further relief as the Court deems just and appropriate.

## COUNT XIV
## All Plaintiffs' Claims for Reckless Infliction Of Emotional Distress Against All Defendants

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

196.    Defendants knew or should have known that the wrongful cremation of MACK JENKINS' remains would cause severe emotional distress to his family.

197.    Plaintiffs contacted Defendants on June 8 and June 9, 2022, clearly stating their intent to claim their son's body.

198.    Defendants had a duty to maintain contact with Plaintiffs and dispose of the deceased's body in accordance with the family's wishes.

199.    FDOC had the information available to contact the Plaintiffs and inform them that their son's body was set to be cremated or that the body was going to the wrong funeral home

200.    Despite this, Defendants: Failed to maintain contact with Plaintiffs regarding the location and status of MACK JENKINS' remains; Gave Plaintiffs incorrect information, directing them to Lewis Funeral Home instead of the actual funeral home where MACK JENKINS' remains were sent Brown Funeral Home & Blue Lake Crematory; and Authorized and facilitated the wrongful cremation of Mack Jenkins without first informing Plaintiffs, depriving them of the opportunity to prevent it.

201.    Defendants knew or should have known that failing to notify Plaintiffs of the disposal of their son's body would cause severe emotional distress for direct family members.

202.    Defendants knew or should have known that the family claimed the body

and thus had an interest in the disposal of the body and the ceremonies accompanying death of a loved one.

203.    Defendant's conduct was extreme, outrageous, reckless, exceeding all bounds of human decency, and should be regarded as odious and utterly intolerable in a civilized community.

204.    Plaintiffs, as the parents of the deceased MACK JENKINS, suffered severe emotional distress, including shock, anguish, depression and profound grief due to the improper disposal of their son's body as it related to their religious beliefs.

**WHEREFORE,** Plaintiffs pray for the following relief: Compensatory damages against Defendants for severe emotional distress, including but not limited to psychological trauma, anguish, and profound grief, depression, anxiety, and lasting mental suffering resulting from Defendants' reckless actions, damages for loss of religious and cultural dignity due to the irreversible destruction of MACK JENKINS' remains in violation of Plaintiffs' religious beliefs; An award of punitive damages against Defendants for their outrageous, reckless, and willful misconduct, which exceeded all bounds of human decency and demonstrated deliberate indifference to Plaintiffs' rights and suffering; Award pre-judgment interest on all economic and non-economic losses sustained by Plaintiffs; Award post-judgment interest at the maximum legal rate until the judgment is satisfied; Judgment for reasonable attorney's fees and litigation costs incurred in bringing this action; Grant such other and further relief as this Court deems just, proper, and equitable under the circumstances; A trial by jury on all issues so

triable.

## COUNT XV
### All Plaintiffs' Claims for Violation Of The Florida Cemetery Services Act; Interference With The Disposition Of A Dead Body Against FDOC, SRCI, SECRETARY DIXON, WARDEN QUINN, A.W. WATKINS and A.W. SANTIAGO

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

205. Under Florida law, a cremation may not be performed until a legally authorized person provides written authorization. See Fla. Stat. § 497.607(1).

206. A "legally authorized person" includes a surviving parent or adult child of the decedent. See Fla. Stat. § 497.005(43).

207. No family member ever provided written authorization for the cremation of the decedent MACK JENKINS.

208. FDOC and its officials failed to notify Plaintiffs that their son's remains had been transferred to a different funeral home and that cremation had been scheduled with Defendant BFH.

209. FDOC, through its agents and officials, wrongfully authorized the cremation of MACK JENKINS' remains, despite Plaintiffs' explicit request to claim the body.

210. By unlawfully authorizing cremation, FDOC and its officials violated Florida law and deprived Plaintiffs of their legal right to determine the disposition of

their son's remains and has interfered with the Plaintiffs' right to dispose of their son's body.

**WHEREFORE,** Plaintiffs respectfully request that this Court grant the following relief against Defendants FDOC and its officials: Compensatory damages associated with the improper handling of the remains of the decedent's body, emotional distress, religious harm, mental anguish and permanent loss of religious burial rights; Punitive damages against all Defendants who acted with malice, willful indifference, or reckless disregard for Plaintiffs' rights; Statutory damages as authorized under Fla. Stat. § 497.607; an award of reasonable attorney's fees and costs of this action; pre-judgment and post-judgement interest on all economic losses; such further relief the Court deems just and proper; and a trial by jury on all issues so triable.

<u>**COUNT XVI**</u>
<u>**All Plaintiffs' Claims for Violation Of The Florida Cemetery Services Act;
Interference With The Disposition Of A Dead Body Against Brown Funeral
Home & Blue Lake Crematory**</u>

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

211.    Florida law prohibits cremation without a signed authorization from a legally authorized person. See Fla. Stat. § 497.607(1).

212.    Defendant BFH cremated the remains of the decedent MACK JENKINS without receiving authorization from any legally authorized person.

213.    The only authorization received was an "Authorization for Cremation and

Disposition" signed by A.W. SANTIAGO, which was not notarized and did not come from a legally authorized person under Florida law.

214.    Defendant BFH had an independent duty to verify that a legally authorized person had consented to the cremation but failed to do so.

215.    By proceeding with cremation based on improper authorization, Defendant BFH unlawfully interfered with Plaintiffs' right to control the disposition of their son's remains.

216.    Defendant BFH was never given a copy of any declaration of intent to be cremated signed by any legally authorized person as outlined above.

217.    Defendant BFH only received an Authorization for Cremation and Disposition signed by A.W. SANTIAGO on June 22, 2022.

218.    This Authorization was signed by Defendant BROWN and was not notarized.

219.    A.W. SANTIAGO was included in the email where Plaintiffs' claimed the body of their son.

220.    A.W. SANTIAGO wrongfully and falsely signed this authorization without obtaining a declaration of intent to be cremated by the deceased or any family member of the deceased.

221.    Consequently, at the direction of FDOC, Defendants BFH and BROWN interfered with the Plaintiffs' right to dispose of their son's body.

**WHEREFORE,** Plaintiffs respectfully request that this Court grant the following relief against Defendants BFH and BROWN for: Compensatory damages associated with the improper handling of the remains of the decedent's body, emotional distress, religious harm, mental anguish and permanent loss of religious burial rights; Punitive damages against all Defendants who acted with malice, willful indifference, or reckless disregard for Plaintiffs' rights; Statutory damages as authorized under Fla. Stat. § 497.607; an award of reasonable attorney's fees and costs of this action; pre-judgment and post-judgement interest on all economic losses; such further relief the Court deems just and proper; and a trial by jury on all issues so triable.

## COUNT XVII
## All Plaintiffs' Claims for Negligent Infliction Of Emotional Distress (NIED) Against All Defendants

Plaintiffs reallege and incorporate by reference paragraphs 1–51, as if fully set forth herein.

222.    Defendants had a duty to act with reasonable care in handling MACK JENKINS' remains and notifying Plaintiffs of their right to claim the body.

223.    Defendants breached this duty by failing to notify Plaintiffs of the cremation and failing to ensure that they were given an opportunity to reclaim their son's remains.

224.    Defendants' negligent acts and omissions foreseeably caused Plaintiffs severe emotional distress.

225.   Plaintiffs, as MACK JENKINS' next of kin, suffered extreme mental anguish due to Defendants' mishandling of their son's remains.

226.   Defendants' actions were negligent, reckless, and in complete disregard of the impact this would have on Plaintiffs.

**WHEREFORE,** Plaintiffs respectfully request that this Court grant the following relief against all Defendants for: Compensatory damages associated with the improper handling of the remains of the decedent's body, emotional distress, religious harm, mental anguish and permanent loss of religious burial rights; Punitive damages against all Defendants who acted with malice, willful indifference, or reckless disregard for Plaintiffs' rights; Statutory damages as authorized under Fla. Stat. § 497.607; an award of reasonable attorney's fees and costs of this action; pre-judgment and post-judgement interest on all economic losses; such further relief the Court deems just and proper; and a trial by jury on all issues so triable.

## COUNT XVIII
## All Plaintiffs' Claims for Negligent Training and Supervision Against FDOC & SECRETARY DIXON

Plaintiffs reallege and incorporate by reference paragraphs 1–51 as if fully set forth herein.

227.   Defendants FDOC and SECRETARY DIXON, as the agency and official responsible for correctional institutions in Florida, had a duty to hire, train, supervise, and retain correctional officers and administrators who could competently and lawfully handle inmate deaths and disposition of remains.

228.    Defendants were responsible for ensuring that staff followed FDOC policies, Florida law, and constitutional protections concerning the proper handling of inmates' bodies and the rights of their families.

229.    Defendants breached their duty by:

    a. Hiring, training, and retaining personnel unqualified or inadequately trained to properly handle inmate remains.

    b. Failing to instruct staff on the importance of next-of-kin notification and compliance with religious and constitutional rights.

    c. Failing to supervise or discipline WARDEN QUINN, A.W. SANTIAGO, A.W. WATKINS, and other FDOC personnel who ignored Plaintiffs' lawful claim to their son's body.

    d. Allowing FDOC personnel to authorize cremation without legal authorization from a legally authorized person.

230.    Due to Defendants' failure to properly train and supervise staff, FDOC personnel erroneously authorized the cremation of MACK JENKINS in direct violation of FDOC policy, Florida law, and Plaintiffs' constitutional rights.

231.    If Defendants had properly trained and supervised their staff, Plaintiffs would have been allowed to recover their son's body and conduct a proper religious burial in accordance with Islamic tenants.

232.    As a direct and proximate result of Defendants' negligence, Plaintiffs suffered irreparable emotional and religious harm due to the wrongful cremation of

their son, were denied their legal right to claim their son's remains, and experienced severe mental anguish, trauma, and loss of religious dignity.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief against Defendants FDOC and SECRETARY DIXON for: Compensatory damages for negligent oversight leading to the unlawful cremation of the decedent's body, emotional distress, religious harm, mental anguish and permanent loss of religious burial rights; Punitive damages against all FDOC officials responsible for failing to enforce proper policies and training and for reckless disregard of Plaintiffs' rights; An order requiring FDOC to implement proper training for handling inmate remains; together with attorney's fees and costs of this action, pre-judgment and post-judgement interest on all economic losses; any other relief the Court deems just and equitable; and a trial by jury on all issues so triable.

**COUNT XIX**
**All Plaintiffs' Claims for Negligent Training and Supervision Against SRCI**
**AND WARDEN QUINN**

Plaintiffs reallege and incorporate by reference paragraphs 1–51 as if fully set forth herein.

233.    Defendant WARDEN QUINN as the warden of Defendant SRCI, had a duty to hire, train, supervise, and discipline correctional officers under his command.

234.    Defendant WARDEN QUINN was responsible for ensuring that A.W. SANTIAGO, A.W. WATKINS, and other FDOC personnel properly followed the law regarding family claims to an inmate's remains.

235.    Defendant WARDEN QUINN breached his duty by:

    a.  Failing to properly train and supervise staff in handling deceased inmates' remains.

    b.  Permitting A.W. SANTIAGO to authorize cremation without verifying whether the family had claimed the body.

    c.  Failing to ensure that MACK JENKINS' body was handled lawfully, in accordance with FDOC policy, Florida law, and Plaintiffs' religious rights.

236.    Had Defendant properly trained and supervised staff, MACK JENKINS' remains would not have been unlawfully cremated against Plaintiffs' explicit instructions.

237.    Defendant's failure directly led to the violation of Plaintiffs' rights, the denial of their ability to conduct a religious burial, and the resulting severe emotional and religious trauma.

238.    Plaintiffs suffered irreparable emotional and religious harm due to the wrongful cremation of their son, were denied their legal right to claim their son's remains, and experienced severe mental anguish, trauma, and loss of religious dignity.

**WHEREFORE,** Plaintiffs respectfully request that this Court grant the following relief against Defendants WARDEN QUINN and SRCI for: Compensatory damages for negligent oversight leading to the unlawful cremation of the decedent's body, emotional distress, religious harm, mental anguish and permanent loss of religious

burial rights; Punitive damages against all SRCI officials responsible for failing to enforce proper policies and training and for reckless disregard of Plaintiffs' rights; An order requiring SRCI to implement proper training for handling inmate remains; together with attorney's fees and costs of this action, pre-judgment and post-judgement interest on all economic losses; any other relief the Court deems just and equitable; and a trial by jury on all issues so triable.

Dated this 19th day of March 2025.

Respectfully submitted,

*/s/ Christopher E. Varner*
Christopher E. Varner, Esq.
Florida Bar No. 0140147
Varner Law, P.L.L.C.
21 East Garden Street., Suite 200
Pensacola, Florida 32501
Telephone: (850) 750-4529
Facsimile: (850) 400-5440
cvarner@varnerteamlaw.com
Attorneys for Plaintiffs